[Cite as *Morris v. Ohio Dept. of Rehab. & Corr.*, 2010-Ohio-5685.]

# Court of Claims of Ohio

The Ohio Judicial Center
65 South Front Street, Third Floor
Columbus, OH 43215
614.387.9800 or 1.800.824.8263
www.cco.state.oh.us

PETER A. MORRIS

     Plaintiff

     v.

OHIO DEPARTMENT OF REHABILITATION AND CORRECTION

     Defendant
     Case No. 2009-05901

Judge Alan C. Travis
Magistrate Matthew C. Rambo

MAGISTRATE DECISION

{¶ 1} Plaintiff brought this action alleging negligence. The issues of liability and damages were bifurcated and the case proceeded to trial on the issue of liability.

{¶ 2} At all times relevant, plaintiff was an inmate in the custody and control of defendant at the Belmont Correctional Institution (BeCI) pursuant to R.C. 5120.16. On the morning of May 26, 2009, plaintiff stood on an approximately 8-foot tall ladder dusting the air ducts in "4 House" at BeCI[1] when he was struck on the left side of the head by the blade of a ceiling fan. Plaintiff asserts that defendant both negligently supervised his activities and negligently permitted the fan to be turned on while he was cleaning the ducts.

{¶ 3} Plaintiff testified that on the day of the incident he was awakened between 8:00 a.m. and 9:00 a.m. and ordered to report to Corrections Sergeant Larry Dunham. Plaintiff stated that Dunham ordered him to clean the dust off the large, round, air ducts in the building. According to plaintiff, this task is accomplished by using a ladder to

---

[1]Plaintiff's July 13, 2010 motion for a "view" of the area is DENIED.

reach the ducts and then simply wiping them off with rags.  Plaintiff testified that at the time he mounted the ladder, the ceiling fans in the unit were off but that after approximately ten minutes, the fans were turned on and the blade of a nearby fan struck his head.  According to plaintiff, the fans can only be turned on using a wall-mounted switch located near the corrections officer's (CO) desk, approximately 30 feet from where he was working.  Plaintiff stated that the blow caused a laceration to his head that started bleeding, and that he used his shirt to cover the wound.  According to plaintiff, he then walked to the officer's desk and reported the incident to the COs on duty.  Plaintiff testified that the COs at the desk summoned medical staff who arrived a short time later with a cart to take him to the infirmary for treatment.

{¶ 4}   Plaintiff testified that after Dunham gave him the ladder and instructed him to clean the ducts, Dunham returned to his office.  Plaintiff further testified that he wore earphones as he worked and that he would not have been able to hear the fans turn on or any warning that might have been issued regarding the fans being turned on.  Plaintiff also stated that he was unable to see the officer's desk from where he was at the time of the incident.  Plaintiff does not know who turned on the fans.

{¶ 5}   Inmates Christian Walters and William Seawood were housed in 4 House on the day of the incident.  According to Walters, he was sitting on his bed approximately "15 or 20 steps" from where plaintiff was working at the time of the incident.  Walters testified that the fans were operating earlier that morning, that they had been turned off at some point in time, and that it had begun to get hot in the building.  Walters stated that he got up to ask a CO to turn the fans on, but saw plaintiff cleaning the ducts and returned to his bed.  Walters testified that a "few minutes" thereafter he heard the fans turn on, looked in plaintiff's direction, and saw the fan strike him.  Walters further testified that he did not think the COs at the desk could see plaintiff.

{¶ 6} Seawood testified that on the day of the incident he was sitting on his bed, near Walters' bed, that he observed plaintiff cleaning the ducts and saw the fan strike his head. Seawood also stated that the fans were running earlier in the morning, but were turned off at the time plaintiff was cleaning. According to Seawood, his bed was positioned such that he could both feel a draft from and hear the fans when they were operating, and that he clearly remembered the fans being turned off before plaintiff began cleaning the ducts.

{¶ 7} Sergeant Dunham testified that on the day of the incident, he retrieved a ladder, brought it into the building, asked for volunteers to clean the ducts, and that plaintiff volunteered. According to Dunham, the ladder used is an eight-foot-tall "platform ladder" and the ducts in question are approximately ten feet off the ground. Dunham stated that he supervised plaintiff for a short time, until he noticed that "at least ten" inmates had lined up at his office to speak to him. According to Dunham, at that point, he told plaintiff to stop cleaning, put the ladder aside, and not resume cleaning until instructed to do so. Dunham testified that while he was in his office, plaintiff visited him on two separate occasions and asked if he could resume cleaning the ducts, and that he instructed plaintiff on both occasions not to do so. Dunham testified that he did not see the fan strike plaintiff as he was in his office, but that the fans in the building run continuously, even when someone is cleaning the ducts.

{¶ 8} Dunham opined that plaintiff purposefully allowed the fan to strike his head. To support his theory, Dunham testified that after plaintiff returned from the infirmary, he told him that he would not file a lawsuit about the incident if Dunham would agree to bring contraband into BeCI for him, namely cigarettes and other tobacco products. Dunham filed a conduct report on plaintiff for his actions. (Defendant's Exhibit A.)

{¶ 9} On rebuttal, plaintiff disputed that he volunteered to clean the ducts, that Dunham ever told him to stop cleaning, or that he visited Dunham in his office just prior to the incident.

{¶ 10} In order to prevail upon his claim of negligence, plaintiff must prove by a preponderance of the evidence that defendant owed him a duty, that it breached its duty, and that the breach proximately caused his injuries. *Armstrong v. Best Buy Company, Inc.,* 99 Ohio St.3d 79, 81, 2003-Ohio-2573, citing *Menifee v. Ohio Welding Products, Inc.* (1984), 15 Ohio St.3d 75, 77. Defendant owed plaintiff the common law duty of reasonable care. *Justice v. Rose* (1957), 102 Ohio App. 482, 485. Reasonable care is that which would be utilized by an ordinarily prudent person under similar circumstances. *Murphy v. Ohio Dept. of Rehab. &* Corr., Franklin App. No. 02AP-132, 2002-Ohio-5170, ¶13. A duty arises when a risk is reasonably foreseeable. *Menifee,* supra, at 75. Such a duty includes the responsibility to exercise reasonable care to protect inmates against those unreasonable risks of physical harm associated with institutional work assignments. *Boyle v. Ohio Dept. of Rehab. & Corr.* (1990), 70 Ohio App.3d 590, 592.

{¶ 11} The court finds that the testimony offered by plaintiff, Seawood, and Walters was more credible than that of Dunham. Specifically, the court finds that the fans were turned off so that plaintiff could clean the ducts, but were turned on soon thereafter; that Dunham was not supervising plaintiff at the time he was struck by the fan; that Dunham did not instruct plaintiff to stop cleaning; that plaintiff did not visit Dunham in his office prior to the incident; and that Dunham's supposition that plaintiff purposefully allowed the fan to strike him is baseless. The court finds that defendant committed a breach of the duty of care it owed to plaintiff by not properly supervising him while he worked, and although defendant argues that it is unclear who turned the fans on, it is clear that defendant had control over the switch for the fans and negligently permitted the fans to be turned on while plaintiff was on the ladder. As a result, plaintiff was struck by the fan blade and injured. Accordingly, judgment is recommended in favor of plaintiff.

*A party may file written objections to the magistrate's decision within 14 days of the filing of the decision, whether or not the court has adopted the decision during that 14-day period as permitted by Civ.R. 53(D)(4)(e)(i). If any party timely files objections, any other party may also file objections not later than ten days after the first objections are filed. A party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion within 14 days of the filing of the decision, as required by Civ.R. 53(D)(3)(b).*

_____
MATTHEW C. RAMBO
Magistrate

cc:

Amy S. Brown                         Richard F. Swope
Kristin S. Boggs                     6480 East Main Street, Suite 102
Assistant Attorneys General          Reynoldsburg, Ohio 43068
150 East Gay Street, 18th Floor
Columbus, Ohio 43215-3130

MR/cmd
Filed October 12, 2010
To S.C. reporter November 18, 2010